UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM N., | No. 2:18-CV-00145-RHW |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 15. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied Plaintiff's

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C § 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I. Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits on May 1, 2014. AR 50. His alleged onset date of disability is September 1, 2008. AR 125. Plaintiff's application was initially denied on August 25, 2014, AR 66-68, and on reconsideration on October 8, 2014, AR 73-77.

A hearing with Administrative Law Judge ("ALJ") Donna L. Walker occurred on October 20, 2016. AR 36-49. On December 15, 2016, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 23-30. The Appeals Council denied Plaintiff's request for review on March 12, 2008, AR 1-6, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on May 11, 2018. ECF Nos. 1, 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). To be eligible for Social Security Disability Insurance, a claimant must establish disability while he meets the insured status requirements of the Social Security Act. 42 U.S.C. § 423(a)(1).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 404.1572. If the claimant is engaged in substantial activity, he is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 388-89 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 50 years old at the alleged date of onset. AR 125. He completed the twelfth grade and two years of law enforcement training. AR 144. Plaintiff is able to communicate in English. AR 142. Plaintiff has past work as a long-haul trucker. AR 144, 162-63. Plaintiff reported that he stopped working on October 31, 2007 due to legal issues. AR 143.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from September 1, 2008, through December 31, 2010. AR 30.

**Initially**, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010. AR 25.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 1, 2008 through December 31, 2010, the date Plaintiff last met the insured status requirements of the Social Security Act. AR 25.

**At step two**, the ALJ found that Plaintiff had the following medically determinable impairments through December 31, 2010: left tibia/fibular fracture secondary to motorcycle accident, status post fixation surgery; mild post-traumatic stress disorder (PTSD); high blood pressure; and cervical spondylosis. AR 25.

The ALJ then found that through December 31, 2010, Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months. AR 27.

Based on this unfavorable step two determination, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 1, 2008, the alleged onset date, through December 31, 2010, the date last insured. AR 30.

///

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; and (2) failing to properly consider and weigh the opinion of Jordan Espiritu, M.D.

## VII. Discussion

### A. The ALJ did not err in finding Plaintiff's symptom statements were not entirely consistent with the medical evidence and other evidence in the record.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is reliable. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's symptom statements, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 28. Specifically, the ALJ found that Plaintiff's symptom statements were undermined by the medical evidence in the record and his attempt at fleeing from police in 2008. AR 28.

First, the ALJ found that Plaintiff's allegations of completely disabling limitations were inconsistent with the medical evidence. AR 28. This determination is supported by substantial evidence in the record. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). However, this cannot be the only reason for

rejecting a claimant's symptom statements. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ found that despite Plaintiff's allegations that his left leg injury resulted in difficulties with lifting, squatting, bending, standing, walking, kneeling, and climbing stairs, that there was no follow up indicating any problems with this left leg or other complications after his surgery in 2007 and prior to his date last insured on December 31, 2010. AR 28. On his Function Report dated June 25, 2014, Plaintiff alleged that "lifting more than 100 lbs hurts my back, squatting hurts my ankel [sic.], bending over makes me dizzy. Standing makes my feet swell, walking irritates my arthritis, kneeling hurts my knees, . . . stairs hurt my ankel [sic.]." AR. 159. He stated he could walk a couple of miles before needing to stop and rest for five to ten minutes. *Id*. The ALJ found these allegations inconsistent with the medical evidence. AR 28. Plaintiff was in a motorcycle accident on April 12, 2007 that resulted in "a grade 3 open tibia fracture with a shaft fracture of the tibia and fibula. Also, his navicular in the foot was in multiple pieces and dislocated. An open wound was present in the foot." AR 523. He received two surgeries and intramuscular rodding. AR 529-30. Plaintiff was discharged on April 20, 2007. AR 523. On August 23, 2007, Plaintiff was seen in the emergency room following an assault. AR 227. Imaging of the left foot showed the intramedullary rod, marked degenerative changes in the mid foot, and fragmentation of the

navicular. Tr. 231-32. Plaintiff was treated at the emergency room following an attempt to escape police custody on November 1, 2008, and imaging showed "Patient is status post placement of intramedullary rod across a distal tibial fracture with screws also seen in the medial malleolus. Healed mildly offset distal fibular fracture. No acute fractures are identified." AR. 233, 237. Imaging from November 6, 2009 showed a healed medullary rod plate and screws, posttraumatic sclerosis-dissolution tarsal navicular bone suggesting posttraumatic avascular necrosis and fragmentation, and posttraumatic sclerotic midtarsal osteoarthritic reaction. AR 278. The only other medical evidence in the record prior to the date last insured are from Plaintiff's incarceration. He was treated for nightmares, poor sleep, and hypertension. AR 362-70, 384. While providing his medical history during incarceration, he reported that his left ankle was painful and swollen and needed surgery. AR 246.

At no point did Plaintiff present to medical professionals following his surgery requesting treatment for the alleged symptoms stemming from the initial left leg injury. Therefore, the imaging reports support the ALJ's conclusion that Plaintiff had a medically determinable impairment through could reasonably be expected to produce some of the alleged symptoms. AR 28. However, the lack of medical evidence demonstrating that he sought treatment prior to the date last insured undermines his severity of reported symptoms. Unexplained or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, the ALJ's first reason for rejecting Plaintiff's symptom statements is supported by substantial evidence and meets the specific, clear and convincing standard.

Second, the ALJ found that Plaintiff's attempted escape from police custody demonstrated a greater functional ability than alleged. AR 28. An ALJ may discount a claimant's symptoms statements when his reported activities contradict his allegations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, despite his alleged severe left leg impairment, Defendant "was in handcuffs in the back of a patrol vehicle when he broke out the window, exited through the window, and ran up a local hillside where he was at large for approximately an hour" and had to be retrieved by a canine unit on November 1, 2008. AR 233. The ALJ found that "[f]rom this record, it is clear that the claimant was not experiencing any residual problems with his left leg." AR 28.

On February 24, 2017, Plaintiff provided a statement alleging that he was on medication at the time of the incident to help him heal from his left leg injury that made him "function in an unrealistic way," and that he did not run because he was handcuffed and wearing a cast on his left leg. AR 225-26. However, there is no evidence in the record that Plaintiff received such a "steroid" or was placed in a

cast prior the incident. Therefore, substantial evidence supports the ALJ's determination that the attempted escape from police custody demonstrated a lack of residual problems with the left leg. This meets the specific, clear and convincing standard.

Defendant identified additional reasons the ALJ rejected Plaintiff's symptom statements: Plaintiff's activities of walking in the park and going shopping and his ability to function socially. ECF No. 15 at 16-17. However, these activities were identified by the ALJ as a part of assessing the severity of Plaintiff's psychological impairments under the section 12.00C of the Listing of Impairments, and not as an assessment of Plaintiff's symptom statements. AR 29. Therefore, these amount to post hoc rationalizations, which will not be considered by the Court. *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion

must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's symptom statements because the ALJ properly provided multiple specific, clear and convincing reasons for doing so.

**B. The ALJ was not required to address the opinion of Jordan Espiritu, M.D.**

Plaintiff argues that the ALJ was required to give Dr. Espiritu's opinion great weight. ECF No. 12 at 15.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

Dr. Espiritu completed a Physical Functional Evaluation form on June 3, 2014 for the Washington Department of Social and Health Services. AR 386-94. He diagnosed Plaintiff with a left ankle fracture, hypertension, and hearing loss. AR 387. He opined that the left ankle fracture resulted in moderate limitations in the activities of standing, walking, lifting, carrying, handling, pushing, and pulling. *Id*. He further opined that Plaintiff was limited to sedentary work. AR 388. The ALJ did not address Dr. Espiritu's opinion in her decision. AR 23-30.

The Ninth Circuit has found that "reports containing observations made after the period for disability are relevant to assess the claimant's disability," and "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). However, the ALJ is not required to discuss evidence that "is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Here, nothing in Dr. Espiritu's 2014 opinion establishes that it is retrospective and addresses the period prior to the December 31, 2010 date last insured. Considering there were over three years between the relevant period and when the Physical Functional Evaluation form was completed, the opinion was not probative. Therefore, the ALJ's failure to discuss it was not an error.

Plaintiff argues that his left leg impairment did not improve following the initial injury. ECF No. 17 at 5, 7. He asserts that if he were limited to sedentary

work in 2014, then he was limited to sedentary work prior to the December 31, 2010 date last insured. *Id.* However, this is inconsistent with his own testimony, that since the injury occurred his leg has continued to get worse. AR 41. The Court will not disturb the ALJ's decision.

## VIII. Conclusion

The burden of establishing the existence of a medically determinable severe impairment prior to the date last insured at step two is squarely on Plaintiff. *Tackett*, 180 F.3d at 1098-99. Here, the ALJ found that Plaintiff failed to meet the burden with the limited evidence provided in the record. The Court will not disturb that determination.

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from harmful legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 15,** is **GRANTED.**

///

///

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 13th day of September, 2019.

<u>*s/Robert H. Whaley*</u>
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**